B. F. DUREN ET AL. v. THE HOUSTON & TEXAS CENTRAL
RAILWAY COMPANY.

No. 69.

**1. Judicial Knowledge—Railway Reservation.**
The court should take judicial knowledge of the fact that in 1854 all the unappropriated public domain in Van Zandt County was reserved from location by the Act of December 21, 1853, entitled "An act to provide for the construction of the Mississippi & Pacific Railway.".......... 290

**2. Relocating Land Certificate.**
The location of a land certificate in 1854 upon land reserved from location did not affect the validity of the certificate. It could be withdrawn and relocated upon other lands................................. 290

**3. Same—Statutory Rule.**
The third section of the Act of August 30, 1856, is not applicable to locations made prior to its passage. Pasch. Dig., art. 4575 .............. 290

### 4. Location in Wrong Land District.

A location and survey of public land situate in unorganized territory and made in a land district other than that having jurisdiction over the land located, are of no effect. A validation by the Legislature could not affect existing adverse rights.................................. .. 291

### 5. Survey by Interested Party.

A survey by an agent of the owner of the land certificate used in the location, approved by the district surveyor, regularly recorded, and returned, is valid from the time of such approval.................... 291

### 6. Legal Right—Stale Demand—Location and Survey.

Article 4745, Revised Statutes, gives a party claiming land under a valid land certificate, location, and survey, the right to maintain an action at law for its recovery. The defense of stale demand can not, therefore, be interposed............................................... 291

### 7. Cross-Assignments of Error.

Whenever one party appeals, the other may file cross-assignments of error, and procure a revision of the judgment on the matters complained of by him............................................. ....... 291

Certified Questions from Court of Civil Appeals for Second District, in an appeal from Hardeman County.

The matters certified are as follows:

" First. The Sidney Smith one-third league certificate was located in Van Zandt County in 1854, and afterwards, with field notes, returned to and filed in the General Land Office, where it remained till 1869, when it was floated and withdrawn by one Cundiff for the owners, with the consent of the Commissioner, and in 1874 located on the land in controversy and afterwards returned, with field notes, to Land Office within proper time. If the surveys first made in Van Zandt County were in conflict with any other survey, it was the Mississippi & Pacific Railway reservation.

" 1. May we, without proof, know judicially that these surveys in Van Zandt County were then covered by this reservation? If so, would that fact prevent the certificate from being merged in the land and lost by the subsequent withdrawal from the Land Office?

" 2. If not in conflict with the reservation or other survey, was it so merged and lost?

" Second. Appellee claims in opposition to the Sidney Smith location under railway certificates, upon some of which patents issued in 1876, while appellants claim under the Sidney Smith location upon which no patent ever issued. Appellants filed their suit in court below, July 6, 1889, to recover the land thus covered by conflicting locations. When located, the lands were in an unorganized county, and the location for appellees was made in 1873 by the surveyor of the wrong land district, but was afterwards (Act of 1881) validated so far as the Legislature had the power to do it. The surveyor of the proper district approved in his

office the work and field notes as done and made out by the agent who located for appellants, but did not himself go on the ground and do the work.

"1. In such case, if all the land certificates be valid, which location should prevail?

"2. Does the defense of stale demand have application? In other words, does the fact that appellee claims under a patent issued more than ten years before the institution of the suit enable them to interpose the defense of stale demand to prior location of appellants which has never been patented? It is important that this question be answered, because of its application to other cases as well as this.

"Third. Appellants recovered a part of the land. Appellee has submitted cross-assignments of error, but did not perfect any appeal by giving bond or otherwise.

"1. Can we consider these cross-assignments except to sustain the judgment? .

"2. Can appellee have a reversal in such case of that part of the judgment rendered against it?"

*A. M. Carter* and *A. M. Jackson, Jr.,* for appellants.— 1. The attempted location of the Sidney Smith one-third league in Van Zandt County in 1854 was within the Mississippi & Pacific Railroad reservation, and therefore void, and did not appropriate the Van Zandt County land or tie the certificate thereto. Pasch. Dig., art. 4575; Woods v. Durrett, 28 Texas, 430; Wright v. Hawkins, 28 Texas, 452.

2. The certificate having been withdrawn from the Land Office prior to November 29, 1871, and not being then on file in the Land Office, and not returned thereto within nine months thereafter, the Van Zandt surveys thereby lapsed, and thereafter said certificate was locatable elsewhere, even if it had not before then been properly floated. Act Nov. 29, 1871, sec. 2; Pasch. Dig., arts. 7096, 7097; Johnson v. Eldridge, 49 Texas, 522; Snider v. Railway, 52 Texas, 306; Snider v. Methvin, 60 Texas, 487.

3. Plaintiffs' rights to the land sued for having attached prior to the passage of the Act of April 4, 1881, could not be divested thereby; nor did said act pretend so to do, but by its own terms said act is limited to surveys not then in conflict with any other survey on file. Gen. Laws 1881, p. 104, sec. 3; Cox v. Railway, 68 Texas, 226; Wright v. Hawkins, 28 Texas, 452.

*T. D. Cobb,* for appellee, cited: Adams v. Railway, 70 Texas, 252; Howard v. Perry, 7 Texas, 266; Horton v. Pace, 9 Texas, 84; Styles v. Gray, 10 Texas, 506; Stafford v. King 30 Texas, 269; Jones v. Burgett,

46 Texas, 292; Thompson v. Railway, 68 Texas, 392; Sanborn v. Gunter & Munson, 84 Texas, 284; Railway v. Uribe, 85 Texas, 388; Doswell v. De Lanzo, 20 How., 34; Barker v. Torrey, 69 Texas, 7; Blum v. Looney, 69 Texas, 3; United States v. Des Moines, etc., Co., 142 U. S., 541; Bryan v. Shirley, 53 Texas, 452; Walet v. Haskins, 63 Texas, 220; Haskins v. Wallet, 68 Texas, 420; Eliot v. Whitaker, 30 Texas, 413; Caperton v. Wanslow, 18 Texas, 134.

GAINES, ASSOCIATE JUSTICE.—This case comes to us for the determination of certain questions certified by the Court of Civil Appeals of the Second Supreme Judicial District.

1. The first matter certified is resolved into three different questions. We answer, first, that the court should take judicial knowledge of the fact that in 1854 all the unappropriated public domain in Van Zandt County was reserved from location by virtue of the Act of December 21, 1853, entitled "An act to provide for the construction of the Mississippi & Pacific Railroad." Spec. Laws 1853–54, p. 7; Woods v. Durrett, 28 Texas, 430; Wright v. Hawkins, 28 Texas, 452. We are also of opinion that a location upon land in the reserve would not affect the validity of the certificate. It could be withdrawn and located upon any other land subject to be appropriated by such certificate. Section 3 of the Act of August 30, 1856, is not applicable to the location in question. It was made in 1854, and that act expressly provided that nothing therein contained should be so construed as to affect locations theretofore made. Pasch. Dig., art. 4575.

Previous to the passage of this act, it had been the custom to "lift" certificates and to relocate them at will. One of its purposes was to prevent the "lifting or floating" of certificates which should thereafter be located upon land subject to entry by such certificates. Another was to discourage the litigation incident to filing upon lands previously appropriated by other persons. The act shows that in the opinion of the Legislature it was lawful at the time of its passage to withdraw a certificate from a location previously made, and to locate it upon other land; and upon principle we see no reason why a certificate located upon land reserved from appropriation by legislative act could not be taken from the file and applied to other land subject to location. The location upon land not subject to be located by it being contrary to law and void, should not affect any right, in the absence of a statute declaring such effect.

2. Upon the case submitted in the second paragraph of the certificate, we are of opinion that the location of the Smith certificate should prevail. The location of the certificates under which appellees claim having been made by a surveyor who had no power to accept a file or make a survey, was wholly without authority of law and therefore of no effect

whatever. As between the locators and the State, the locations were subject to be validated by an act of the Legislature, but not as against any right of a third party lawfully acquired by appropriation before the passage of the act. Howard v. Perry, 7 Texas, 259. . Therefore the question of title depends upon the question of the validity of the location and survey of the land in controversy made by virtue of the Smith certificate in 1874.

It seems that the survey and field notes were made by an agent of the locators, and were approved and adopted by the lawful surveyor. This is certainly a practice not to be commended, and one which it would seem the Legislature did not contemplate. Therefore, if the question were an open one, we might have difficulty in reaching the conclusion that a survey made by a locator for his own benefit could be adopted by the surveyor so as to give it any validity. But it was held in Howard v. Perry, supra, that this could be done. It is true that in that case the locator was himself the deputy surveyor; but the court seem to attach no importance to that fact. In the opinion they say: " But it is objected to the defendant's survey that it was made by and for himself. It is, however, approved by the district surveyor, and thereby became, in contemplation of law, his act." And we apprehend that the deputy had no authority to make a survey for himself, and that validity of the survey depended wholly upon the approval of the district surveyor. Such is our construction of the opinion, and it is decisive of the point before us. Whatever our own views may be upon the question as an original one, it has been too long recognized as a rule of property in every department of the State Government to be now overturned.

We further hold, in response to the second question in the second paragraph of the certificate, that the plea of stale demand can not avail the defendants in the suit. Our statutes gives a party claiming land under a valid certificate, location, and survey, the right to maintain an action at law for its recovery by proof of such title. Rev. Stats., art. 4745. This is a clear legal right, to which the plea of stale demand can not be interposed. Although the legal title remains in the State, it does not require the aid of the equitable powers of the court to enforce it.

3. Where one party appeals, the other may file cross-assignments of error and procure a reversal of the judgment in his favor, provided he shows error to his prejudice. Caperton v. Wanslow. 18 Texas, 125; Carroll v. Carroll, 20 Texas, 731; Railway v. Prather, 75 Texas, 53. The report of the case last cited does not fully disclose its history, but we have examined the record and find that the defendants below excepted to the judgment and gave notice of appeal, and filed an appeal bond and assignments of error. The plaintiffs excepted to the judgment, and failed either to give notice of appeal or to file bond, but they assigned errors. The

appellants having failed to file a brief, their assignments were disregarded. The case was considered on the cross-assignments, and the judgment was reversed in favor of the appellees.

This opinion will be certified for the guidance of the Court of Civil Appeals.

Delivered December 21, 1893.